HARRIS, J.,
dissenting.
I respectfully dissent.
I accept appellant’s contention that he discovered after the trial, and could not have discovered earlier, the violent nature of Lawson, one of the victims. I agree also that such evidence might be relevant under certain circumstances in his claim of self-defense. And I agree with the majority herein that the mere fact that we affirmed without opinion appellant’s previous appeal, which included some reference to this late discovered evidence, does not obstruct Dwyer’s current effort to obtain a new trial.
I dissent not because some law prevents appellant from raising the issue; I dissent because the facts testified to by him and his co-defendant at trial preclude relief because they demonstrate that he cannot meet the Jones[1] standard that in order to obtain relief based on newly discovered evidence “the evidence must be of such nature that it would probably produce an acquittal on retrial.” The trial court denied relief, at least partially, because there was no showing “how counsel’s performance affected the outcome of the case.” I agree with the trial judge.
Self-defense involves an admission and avoidance: “I shot the victim but I did so in order to protect myself or another.” It does not apply, at least generally, when the defendant claims the shooting was an accident.[2] Pimentel v. State, 442 So.2d 228 (Fla. 3d DCA 1983), rev. denied, 450 So.2d 488 (Fla.1984).
In this case, Dwyer was convicted of the attempted first degree murder of Lawson and the attempted first degree murder of Norris.[3] Even though Dwyer admittedly was unaware of the victim’s reputation for violence at the time of the incident, nevertheless, as indicated by the majority, such testimony might be relevant to show that the victim was the aggressor. But that depends, I submit, on the defendant’s claiming that the victim was in fact acting aggressively at the time the injury was inflicted.
According to the defendants’ testimony, the two victims approached the defendants at night on a dark road. The victims pretended to be policemen and one of them pulled a gun on the defendants. Then the defendants disarmed the victims![4] Had *50 the shooting and attempted shooting taken place during the period that Dwyer contends he and his companion were resisting the aggression of the victims, this newly discovered evidence would be relevant.[5] But consider Dwyer’s testimony taken from his brief filed in his initial appeal concerning the shooting involving Norris (the bullet actually hit Lawson):
Dwyer then testified as to the actual shooting. He came into contact with Norris as he reached for the radio wires. [Dwyer was afraid that Norris would call for help.] He did not point the gun at Norris and fire. Rather Norris’ movement caused the gun to go off. The gun was leaning against the back of Norris’ shoulder and went off when Norris moved. He did not know why the gun went off, but it was not because he pulled the trigger.
This testimony simply does not justify the majority’s position that appellant was defending himself at the time of the accident. As for waiting for help, as suggested in the majority’s footnote 3, instead of using the radio to call the police, appellant was, according to his testimony, attempting to disable it. Self-defense should not be so broadly defined or applied that it becomes a license for murder.
As to the self-defense claim urged by appellant concerning Norris, it is improbable, for two reasons, that informing the jury of Lawson’s violent nature would have affected the verdict. Both reasons are contained within the jury instruction on justifiable use of deadly force.
The fact that the defendant was wrongfully attacked cannot justify his use of force likely to cause death or great bodily harm if by retreating he could have avoided the need to use that force. However, if the defendant was placed in a position of imminent danger of death or great bodily harm and it would have increased his own danger to retreat, then his use of force likely to cause death or great bodily harm was justifiable.
By Dwyer’s admission, the victims were overcome and disarmed. There was no evidence that they had access to any other weapons. Dwyer and Perkins had the only weapons shown by the record and were in control of the scene. Nothing prevented them, except perhaps a desire for retribution, from then getting into their vehicle and driving away. Indeed that is exactly what they say they did after the shooting and after a car passed which observed the incident and might well have sent help. Nothing in the record indicates why they could not have done so before the shooting. Lawson’s reputation for violence, even if known by the jury, would not change this at all.
If you find that [the victim] had a reputation of being a violent and dangerous person and that his reputation was known by the defendant, you may consider this fact in determining whéther the actions of the defendant were those of a reasonable person in dealing with an individual of that reputation.
First, of course, Dwyer was unaware of any such reputation. But even if he knew of Lawson’s reputation, it could have no bearing on the Norris incident. He does not contend that his concern about Lawson played any role in the “accidental” shooting involving Norris. Dwyer claims the gun accidently discharged when he bent over Norris to disable the radio because Norris moved. Lawson’s reputation would not change this at all. There was no testimony that at the time of the shooting Dwyer believed that Norris (or Lawson) posed .any imminent danger to either himself or his co-defendant, Perkins, the only two who possessed guns.
It is not appropriate to shoot even violent people after they are disarmed. The *51 only purpose of admitting Lawton’s reputation evidence under the facts of this case would be to prejudice the jury against the victims.
Dwyer’s second conviction for attempted murder was based on the aider and abetter theory involving Perkins’ action relating to Lawson. Lawson testified that Perkins pointed his weapon at Lawson and pulled the trigger but the gun misfired. Perkins’ defense to this charge was that it did not happen. He never pulled the trigger and the gun did not misfire. The majority does not indicate how Lawson’s reputation could affect this count. Again, Lawson’s reputation for violence, even if Perkins knew about it, would be irrelevant to this defense. It is highly improbable that the jury would find self-defense to the attempted shooting when Perkins claimed it never happened.
Because of the defenses chosen by Dwyer, accident in the case involving Norris and denial in the case involving Lawson, the newly discovered evidence of Lawson’s reputation for violence, even if submitted to the jury, would not “probably produce an acquittal on retrial” and therefore the trial judge was right in denying relief.
I would affirm the trial court.

. Jones v. State, 591 So.2d 911, 915 (Fla.1991).

. There is an exception when the accidental infliction of injury or death is inextricably intertwined with one’s act in defense of himself or another. For example, "I hit him in the head with a gun to keep him from reaching the knife but the gun accidently went off, hitting him between the eyes.” See generally Williams v. State, 588 So.2d 44 (Fla. 1st DCA 1991). Although the testimony in this case does not support the exception, the claim is not that a self-defense instruction was not given (it was given at least in the Perkins case); it seems to be Dwyer's position that the self-defense claim would have been bolstered by this newly discovered evidence.

. He was also convicted of robbery and criminal mischief.

. The majority's footnote 3 infers that the victims may have had other weapons hidden on themselves or in their vehicle. There is no record support for this supposition.

. Dwyer's co-defendant, not involved in this appeal, was also convicted of aggravated battery for a beating inflicted on Lawson during the time a weapon was being taken from him. Even though self-defense would be a legitimate response to this charge, the issue is not before us.